# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jun 05 2012, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES RIPPS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1109-CR-436 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Sally Blankenship, Judge
Cause No. 15D02-0805-FA-001

**June 5, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

James Ripps pleaded guilty to child molesting as a Class C felony in March 2009. Ripps was sentenced to eight years, six years and three hundred days of which were suspended to probation. In 2011, the State filed a probation revocation petition, alleging Ripps violated the terms of his probation by residing within one-thousand feet of a youth program center and failing to inform all people living at his residence of his sexual conviction. Ripps admitted the violations and the trial court revoked his probation and ordered him to serve the remaining portion of his sentence in prison. Ripps raises one issue for our review, which we restate as whether the trial court abused its discretion by revoking Ripps's probation and ordering him to serve the entire suspended portion of his sentence for violating terms of his probation. Concluding the trial court did abuse its discretion by revoking Ripps's probation and ordering him to serve the remainder of his sentence in prison, we reverse.

## Facts and Procedural History[1]

In 2009, Ripps pleaded guilty to child molesting as a Class C felony for molesting his then-four-year-old son in 1997 or 1998. The trial court sentenced Ripps in accordance with the plea agreement to eight years with six years and three hundred days suspended to probation. Included in the terms of Ripps's probation were conditions forbidding him from committing another crime, requiring him to inform all people living at his place of residence

---

[1] We held oral argument in this case on May 4, 2012, at Franklin Community High School. We wish to thank counsel for their advocacy and extend our appreciation to the faculty, staff, and students of Franklin Community as well as members of the Johnson County Bar Association for their fine hospitality.

of his sex-related conviction, and forbidding him from living within one thousand feet of a youth program center, which is also a criminal offense for sex offenders pursuant to Indiana Code section 35-42-4-11(c).

In June 2009, the State requested Ripps's probation be revoked, alleging Ripps violated a condition of his probation by committing another criminal offense: failure to comply with sex and violent offender registration, a Class D felony. Specifically, Ripps resided within 1,000 feet of a public park and a youth program center, a violation of Indiana Code section 35-42-4-11(c), unconstitutional as applied in State v. Pollard, 908 N.E.2d 1145 (Ind. 2009). Although this was also a violation of the condition of Ripps's probation that he not reside within 1,000 feet of school property, a public park, or a youth program center, the State did not allege such violation in its request for probation revocation. Ripps admitted he violated the condition of his probation that he not commit another crime, and the trial court granted the State's petition to revoke Ripps's probation.[2]

Thereafter, Ripps moved to correct error, contending his conviction for failure to comply with sex offender registration requirements, and the subsequent probation revocation, violated the Indiana and United States Constitutions' prohibitions against ex post facto application of the law because the statute giving rise to such criminal act took effect in July 2006 and his qualifying offense occurred several years prior to that time. The trial court

---

[2] The trial court found "four (4) years [of Ripps's probation] shall be revoked to be served consecutively with" a sentence of 535 days incarceration for the offense of failure to comply with sex and violent offender registration, a Class D felony, and the "remaining time shall remain suspended under the condition that [Ripps] abide by all terms and conditions outlined herein and in previous orders of probation." Appendix [of] Appellant at 34.

3

agreed Ripps's conviction for violating the residency restriction enacted in 2006 violated the Indiana Constitution's ex post facto provision and vacated the conviction. Prior to the trial court vacating Ripps's conviction, he served approximately one to one and one-half years in prison.[3]

Even though Ripps's conviction for violating the residency requirement was vacated, the terms and conditions of his probation included a similar clause. Thus, the State could have requested his probation be revoked for violating that term of his probation rather than for committing another crime. However, because the State's petition to revoke Ripps's probation only claimed he violated his probation by committing a crime, and because the trial court concluded Ripps should not have been convicted for said crime, the trial court concluded the State's petition contained insufficient notice of the alleged probation violation and also vacated Ripps's violation. The trial court specifically noted in its order that "the State could have filed a probation violation for violating conditions of probation that included living within 1,000 feet of a public park and/or a youth center program," but it did not. Appendix [of] Appellant at 44 (emphasis added). Thus, the trial court ordered Ripps to continue with his prior sentence of probation under the same conditions.

On March 11, 2011, Ripps, who suffers from terminal prostate cancer, congestive heart failure, and obstructive pulmonary disease, moved into Ripley Crossing, an assisted-living facility where he would be able to receive the level of care his medical condition requires. On March 14, 2011, Ripps went to the sheriff's department to register his new

---

[3] The exact amount of time Ripps served in prison for his conviction that was later vacated is unclear

address, and a deputy informed Ripps he was living within 1,000 feet of a public library that qualifies as a youth program center. Specifically, Sheriff Gills determined "his apartment" was approximately 980 feet from the public library.[4] On May 27, 2011, the State filed a verified petition alleging Ripps violated conditions of his probation, and on May 28, 2011, Ripps was arrested. He still resided at Ripley Crossing on the date of his arrest. The trial court held a hearing, and Ripps admitted to the alleged violations. The trial court revoked his probation and ordered him to serve the remaining portion of his suspended sentence, two years and two-hundred and sixty-six days,[5] in prison. Ripps now appeals. After holding oral argument on May 4, 2012, this court issued an order directing the trial court to order Ripps's release from prison.[6]

---

in the record. Nevertheless, he did serve some portion of time in prison for an offense that was later vacated.

[4] Sheriff Gills's testimony creates ambiguity. He testified his measurement of 980 feet is "from the corner from [sic] his apartment to the corner of the property at the library." Tr. at 18. It is unclear which location is 980 feet from the corner of library property: Ripps's actual apartment, the assisted-living complex, or the property on which the assisted-living complex is located.

[5] Although it seemed that Ripps's number of days served were over-credited at the conclusion of the 2009 probation violation proceeding and that Ripps had less time left to serve on his original sentence than he should have, the trial court declined to correct any error in Ripps's remaining sentence in the probation violation proceeding underlying this appeal because the State had not filed a motion requesting such a correction.

[6] We stated:

1. This Court held oral argument this morning and having read all the briefs and deliberated on the issues, we conclude that Ripps has adequately demonstrated that revoking his probation on the present basis was an abuse of discretion.

2. While ordinarily Indiana Appellate Rule 65(E) would require certification of the opinion prior to action by the trial court, in equity and law, courts have inherent authority to require immediate compliance with their orders and decrees in order to give effective relief. Noble County v. Rogers, 745 N.E.2d 194, 198 (Ind. 2001); State ex rel. Brubaker v. Pritchard, 236 Ind. 222, 226-27, 138 N.E.2d 233, 235 (1956). . . . Accordingly, we direct the trial court to order Ripps's release forthwith.

## Discussion

### I. Standard of Review

> Probation is a matter of grace and a conditional liberty which is a favor, not a right. The trial court determines the conditions of probation and may revoke probation if those conditions are violated. The decision to revoke probation is within the sound discretion of the trial court. And its decision is reviewed on appeal for abuse of that discretion.

Cooper v. State, 917 N.E.2d 667, 671 (Ind. 2009) (citations omitted). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. Prewitt v. State, 878 N.E.2d 184, 188 (Ind. 2007). Further, on appeal "we consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses. If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation." Woods v. State, 892 N.E.2d 637, 639-40 (Ind. 2008) (citation omitted).

### II. Ripps's Probation Revocation

"Probation revocation is a two-step process. First, the court must make a factual determination that a violation of a condition of probation actually occurred. . . . [T]hen, the trial court must determine if the violation warrants revocation of the probation." Woods, 892 N.E.2d at 640 (Ind. 2008) (citing Morrissey v. Brewer, 408 U.S. 471, 479-80 (1972)). "However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant

---

Order (Ind. Ct. App. May 4, 2012).

6

revocation." Id. (citing United States v. Holland, 850 F.2d 1048, 1051 (5th Cir. 1988) (per curiam)).

Ripps does not contest the first step in our process. He admits that he lived within 1,000 feet of a youth program center and that he failed to inform people living at his place of residence, namely the landlord of Ripley Crossing, of his sex offender status. We thus need not decide whether libraries in general or this library in particular constitute a "youth center" as defined by Indiana Code section 35-41-1-29[7] or as defined by the terms of Ripps's probation. The answer is less obvious than the State contended during oral argument. Instead, Ripps argues the trial court abused its discretion by revoking his entire suspended sentence because he "admitted he violated his probation," "did everything in his power to fix the violation once he was made aware of it," "voluntarily came to the Ripley County Sheriff's office to register his new address," "was understandably confused as to what he needed to do to comply with probation" due to the 2009 proceeding that hinged on a violation of the Indiana Constitution's ex post facto provision, and chose to live at Ripley Crossing because it was an assisted-living facility and he suffered from several serious health conditions. Brief of Appellant at 6-9. Ripps's caretaker, Sherry Kalfrat, testified Ripps was in the process of moving from Milan, where Ripley Crossing is located, to Sunman, Indiana, when he was arrested, and that she "already had most of his stuff packed and moved." Tr. at 32.

---

[7] Effective July 1, 2012, this section has been recodified as Indiana Code section 35-31.5-2-357 by Senate Enrolled Act 26.

Our supreme court discussed the abuse of discretion standard in <u>Tapia v. State</u>, 753 N.E.2d 581, 585 (Ind. 2001), in which the court assessed a trial court's denial of a motion to continue and a motion to withdraw a petition for post-conviction relief. The court stated:

> Our reliance on the abuse of discretion standard invokes some of its well-worn contours. Typically, a fact-finding court is given discretion to act on an issue when it is in a better position than an appellate court to evaluate the factual context surrounding the issue. We will second-guess the fact-finding court only when it responds to that factual context in an unreasonable manner. Prof. Stroud has provided the following description of this standard of review: "Abuse of discretion review, like all mixed question review, consists of an evaluation of facts in relation to legal formulae. In the final analysis, the reviewing court is concerned with the <u>reasonableness</u> of the action in light of the record." 4A Kenneth M. Stroud, Indiana Practice § 12.8 at 246 (2d ed. 1990) (emphasis in original).

<u>Id.</u>

Although Ripps concedes this court and our supreme court have not previously reversed a probation revocation in circumstances such as exist here, our supreme court shed light on the abuse of discretion standard specifically as it applies in probation revocation appeals in <u>Woods</u>. There, Woods was placed on "strict compliance" probation, which was intended to mean that any violation would automatically result in his probation being revoked. While disagreeing with such a zero-tolerance review of probation violations based on due process principles, our supreme court acknowledged the trial court's discretion in deciding whether to revoke probation and stated, "[t]he very notion that violation of a probationary term will result in revocation no matter the reason is constitutionally suspect. For example, failure to pay a probation user fee where the probationer has no ability to pay certainly cannot result in a probation revocation." <u>Woods</u>, 892 N.E.2d at 641 (citation

8

omitted). The supreme court noted other situations in which revoking probation would be constitutionally suspect, such as "a probationer not reporting to his probation officer because he was in a coma in a hospital" or failing a urinalysis test "because of prescription medication a probationer is taking on orders from his treating physician." Id.

Based on the totality of the circumstances, we agree with Ripps that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his suspended sentence in prison. Ripps was sixty-nine years old and suffering from serious health issues, including terminal cancer; he was attempting to adhere to his probation conditions, as evidenced by his going to the sheriff's office to register his new address; although he was initially in violation of the residency restriction, evidence reveals he was taking steps to correct the violation by finding a new residence; while he did live within 1,000 feet of the public library, this was only so by about twenty feet and some ambiguity exists in how this distance was measured; and, last, Ripps previously served time in prison for a crime that was later vacated as violative of our constitutional ex post facto provision. Given the circumstances, it was unreasonable for the trial court to determine Ripps's violation warranted revoking his probation.

## Conclusion

Given Ripps's medical condition, his attempt to adhere to the terms of his probation, the technical nature of the measurement between Ripley Crossing and the public library, the fact that he was in the process of moving out of Ripley Crossing when he was arrested, his having wrongly served time in prison for an offense that violated ex post facto principles, and

the sheriff's department having learned of his living arrangements only because Ripps reported his location, the trial court's revocation of Ripps's probation was an abuse of the trial court's discretion. We therefore reverse the trial court's revocation of Ripps's probation.

Reversed.

BAKER, J., and SHEPARD, Sr. J., concur.