

**FILED**

Sep 27 2017, 10:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Heather M. Shumaker
Schuckit & Associates, P.C.
Zionsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nicholaus Knecht,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 27, 2017

Court of Appeals Case No.
06A05-1701-CR-131

Appeal from the Boone Circuit
Court.
The Honorable Matthew C. Kincaid,
Special Judge.
Trial Court Cause No.
06C01-1301-FD-25

**Rucker, Senior Judge**

[1] Raising the following restated and reordered claims Nicholaus Knecht appeals the trial court's order revoking his probation: (1) he was denied the right to confront and cross examine witnesses; (2) the revocation violated double jeopardy; (3) the evidence was insufficient to support revocation; and (4) the

trial court abused its discretion in ordering Knecht to serve his suspended sentence in community corrections. We affirm.

## Facts and Procedural History

[2] On February 19, 2013 under terms of a plea agreement Knecht pleaded guilty in the Boone Circuit Court to residential entry as a class D felony; theft as a class D felony; conversion as a class A misdemeanor; and unauthorized entry into a motor vehicle as a class B misdemeanor. The trial court sentenced Knecht to an aggregate term of six years in the Department of Correction all of which was suspended to probation with credit for time served in pre-trial confinement. Although the actual date is not clear from the record before us, sometime shortly thereafter Knecht was charged in the Boone Superior Court with one count of child molesting as a class B felony. In consequence, on April 12, 2013 the State filed a petition to revoke Knecht's probation. This petition was subsequently dismissed and the State filed a "Petition To Modify and/or Revoke Probation" on March 7, 2014 noting a pending charge of "Child Molest, CBF." Tr. Vol. 3, pp. 18-19.

[3] At the close of a one-day trial in December 2015 on the charge of child molesting the jury returned a verdict of not guilty. Three days later the State filed an amended petition to revoke probation alleging Knecht had committed

acts which constituted the crimes of child molesting, contributing to the delinquency of a minor, and reckless driving.[1]

[4] At the probation revocation hearing the State presented a few live witnesses in support of its reckless driving and contributing claims. But with respect to its child molest allegation the State relied almost exclusively on the same evidence introduced at the criminal trial. More specifically at the hearing the alleged child molest victim did not testify and little to no new evidence on this allegation was admitted. Instead, the trial transcript of the alleged victim's testimony was introduced into evidence over Knecht's objection. The record shows Knecht also did not testify at the revocation hearing. Rather Knecht introduced his own exhibit - a copy of his trial testimony - "as it related to the trial on the charge of Child Molest . . . ." Tr. Vol. 2, p. 99.

---

[1] The petition alleged:

1. Defendant committed an act which constitutes the crime of Child Molest under I.C. 35-42-4-3 to wit: the Defendant is over 18 years of age and engaged in sexual intercourse with a child less than 14 years of age or sexual conduct with the intent to sexually arouse either himself or the victim.
2. Defendant committed an act which constitutes the crime of Contributing to the Delinquency of a Minor under I.C. 35-46-1-8 to wit: the Defendant is over 18 years of age and aided, induced, or caused a person less than 18 years of age to commit an act of delinquency, specifically violation of Indiana's curfew law I.C. 31-37-3-3.
3. Defendant has been charged with Reckless Driving, CBM; this case is pending under cause number 06D02-1503-CM-0108.

Appellant's App. Vol. 2, p. 103.

[5] After the hearing concluded the trial court found that the State proved by a preponderance of the evidence that Knecht committed the crimes of child molesting and contributing to the delinquency of a minor.[2] The trial court then revoked Knecht's probation and ordered Knecht to serve his six-year suspended sentence on community corrections. Knecht now appeals. Additional facts are set forth below.

# Discussion

## I. Right to Cross Examine Witnesses

[6] Knecht complains the trial court violated his constitutional right to confront and cross examine witnesses by admitting into evidence a transcript of H.W.'s testimony from the criminal trial. He contends the testimony was inadmissible hearsay that should have been excluded.

[7] Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, still "the Due Process Clause of the Fourteenth Amendment [does] impose[ ] procedural and substantive limits on the revocation of the conditional liberty created by probation." *Debro v. State*, 821 N.E.2d 367, 374 (Ind. 2005) (quoting *Cox v. State*, 706 N.E.2d 547, 549 (Ind.

---

[2] The trial court found insufficient evidence to support the reckless driving allegation. *See* Appellant's App. Vol. 2, p. 41.

1999)); *see also Black v. Romano*, 471 U.S. 606, 610, 105 S. Ct. 2254, 2257 (1985). "The minimum requirements of due process that inure to a probationer at a revocation hearing include: (a) written notice of the claimed violations of probation; (b) disclosure of the evidence against him; (c) an opportunity to be heard and present evidence; (d) the right to confront and cross-examine adverse witnesses . . . ." *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). *See also* Ind. Code § 35-38-2-3 (2015) (providing in pertinent part that a probationer "is entitled to confrontation, cross-examination, and representation by counsel").

[8] Nonetheless, confrontation rights in the context of probation revocation are not as extensive as they are in criminal trials. *Robinson v. State*, 955 N.E.2d 228, 232 (Ind. Ct. App. 2011). As one example, the Indiana Rules of Evidence, including those governing hearsay, do not apply in such proceedings. *See* Ind. Evidence Rule 101(c)(2) (declaring in pertinent part, "the rules, other than those with respect to privilege, do not apply in . . . proceedings relating to . . . sentencing, probation, or parole"). Further, the scope of the right to confrontation as explored in the seminal case of *Crawford v. Washington*, 541

U.S. 36, 124 S. Ct. 1354 (2004), also does not apply in probation revocation proceedings.[3] *See Smith v. State,* 971 N.E.2d 86, 89 (2012).

[9] To be sure, due process does not prohibit the use of hearsay evidence "'where appropriate [for] the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.'" *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.5, 93 S. Ct. 1756, 1760 n.5 (1973)). However, this "does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Id.*

[10] In order to admit hearsay evidence at a probation revocation hearing in lieu of live testimony, the State must demonstrate "good cause" for its use. *Id.* at 440. This requirement is met so long as the hearsay bears substantial guarantees of trustworthiness. *Id*. at 441. Substantial guarantees of trustworthiness satisfy the need for flexibility in routine probation revocation hearings. Further, the "substantial trustworthiness test" requires the trial court to evaluate the reliability of the hearsay evidence. *Id.* at 442. "[I]deally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses."

---

[3] In *Crawford*, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment to the Federal Constitution prohibits admission in a criminal trial of testimonial statements by a person who is absent from trial, unless the person is unavailable and the defendant had a prior opportunity to cross examine the person. This constitutional rule prohibits evidence even if it qualifies for a state law hearsay exception. *Crawford* overruled a portion of *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531 (1980), that had authorized the admission of hearsay statements based on findings of particularized guarantees of trustworthiness.

*Id.* (alterations in original) (quoting *United States v. Kelly,* 446 F.3d 688, 693 (7th Cir. 2006)).

[11]    Here, the trial court did not explain why the transcript of H.W.'s testimony in the criminal trial was reliable or why that reliability was substantial enough to justify the State's decision not to produce H.W. as a live witness. However, concluding "the State shall not be required to call the complaining witness at the probation revocation hearing" the trial court found the facts here "indistinguishable" from those in *Lightcap v. State*, 863 N.E.2d 907 (Ind. Ct. App. 2007). Appellant's App. Vol. 2, p. 5.

[12]    In that case, defendant Donald Lightcap, Jr., was on probation for one count of class C felony sexual misconduct with a minor. The State filed a petition to revoke Lightcap's probation alleging he had violated its terms by committing two counts of sexual misconduct with a minor as class B felonies. A jury subsequently found Lightcap not guilty of the charges; but the State proceeded with the revocation case. On the State's motion, the trial court incorporated the testimony and evidence from the criminal trial into the revocation proceeding. The same judge presided over both the jury trial and the probation revocation hearing, and the judge concluded that Lightcap violated the terms of his probation. On appeal Lightcap argued the admission of the criminal trial testimony into evidence at the revocation hearing violated his due process right to confront witnesses. This Court rejected Lightcap's argument noting he was "afforded the opportunity to cross-examine witnesses and present evidence in his own defense at his criminal trial . . . ." *Id.* at 911. Further, the prior

testimony exhibited "substantial indicia of its reliability" because it had been given under oath. *Id*. at 910. *See, e.g., State v. Owings*, 622 N.E.2d 948, 953 (Ind. 1993) (discussing the right of confrontation in the context of a pre-trial deposition and declaring "[t]estimony given under oath, subject to penalties for perjury and recorded by a court reporter has sufficient indicia of reliability").

[13] In this case as in *Lightcap*, the trial testimony of the absent witness had been given under oath and the same judge presided over both the criminal trial and the probation revocation hearing.[4] Thus the record shows the testimony bore substantial guarantees of trustworthiness.

[14] And here also as in *Lightcap* Knecht was afforded the opportunity to cross examine witnesses and present evidence in his own defense at his criminal trial. On this point Knecht seems to concede he had such an opportunity with respect to the child molest allegation. Knecht complains however that he "was not aware of the allegation of contributing to the delinquency of a minor when he questioned H.W. in her deposition and again at the jury trial." Appellant's

---

[4] Seizing on the wording in the *Lightcap* opinion which declares "the *same court* presided over the criminal trial and the revocation of probation hearing," *id* at 910 (emphasis added), Knecht complains "the same trial court did not preside over Mr. Knecht's criminal and probation hearings." Appellant's Br. p. 19. This claim lacks merit. The record shows Judge Matthew C. Kincaid as regular Judge of Boone Superior Court I presided over Knecht's criminal trial. Acting as special judge of the Boone Circuit Court, Judge Matthew C. Kincaid also presided over Knecht's probation revocation proceeding. It is true that the *Lightcap* opinion refers to the "same court." But it also specifically named the sole trial judge that presided over both proceedings. More importantly it is not at all uncommon for this Court as well as our Supreme Court to use the terms "court" and "judge" interchangeably and often within the same opinion. *See, e.g., Voss v. State*, 856 N.E.2d 1211, 1214 (Ind. 2006); *Hanks v. State*, 71 N.E.3d 1178, 1181 (Ind. Ct. App. 2017), *trans. denied*. The same is true in this case. At stake is whether the same entity - whether designated "court" "trial court" "judge" or "trial judge" - presided over both proceedings. Clearly it did so here.

Reply Br. p. 10. He continues, "Mr. Knecht's entire focus was presenting a defense and cross-examining witnesses related to [child molest] elements of proof." *Id*.

[15] We repeat for emphasis that in the context of a probation revocation proceeding, the right of confrontation is not absolute. Rather "[the right] is secured where the testimony of a witness at a former hearing or trial on the same case is reproduced and admitted, where the defendant either cross-examined such witness or was afforded the opportunity to do so . . . ." *Owings*, 622 N.E.2d at 951 (quoting *Brady v. State*, 575 N.E.2d 981, 987 (Ind. 1991)).

[16] The record makes clear Knecht thoroughly cross examined H.W. at trial. Not only did Knecht have the opportunity to cross examine H.W. he availed himself of that opportunity as well. Knecht's implication that he would have pursued a different line of inquiry had he been forewarned of potential future consequences is unavailing. "Whether, how, and to what extent the opportunity for cross-examination is used is within the control of the defendant." *Howard v. State*, 853 N.E.2d 461, 469 (Ind. 2006). In sum, Knecht has failed to show he was deprived of his right to due process.

## *II. Double Jeopardy*

[17] Knecht next contends the probation revocation proceeding represented an improper second attempt to punish him for the crime of child molesting and violated his federal constitutional protection against double jeopardy.

[18] The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fifth Amendment to the federal constitution was made applicable to the States through the Fourteenth Amendment. *See Brock v. State*, 955 N.E.2d 195, 199 (Ind. 2001) (citing *Benton v. Maryland*, 395 U.S. 784, 787, 89 S. Ct. 2056, 2058 (1969)).

[19] The law in this jurisdiction is well settled that a violation of a condition of probation does not constitute an offense for purposes of double jeopardy. *Johnson v. State*, 512 N.E.2d 1090, 1092 (Ind. 1987); *Justice v. State*, 550 N.E.2d 809, 811-12 (Ind. Ct. App. 1990); *Jackson v. State*, 420 N.E.2d 1239, 1242 (Ind. Ct. App. 1981). The Fifth Amendment prohibition against putting any person twice in jeopardy of life or limb applies only to criminal proceedings. A probation revocation which only requires the State to prove a violation by the civil preponderance standard, rather than beyond a reasonable doubt, is not a criminal proceeding. *See Jackson*, 420 N.E.2d at 1242. Knecht's argument on this point fails.[5]

---

[5] In his Reply Brief Knecht seems to concede this point declaring: "Although the State does not proceed to cite cases in this section of the argument, the case law appears to support its argument relating to double jeopardy." Appellant's Reply Br. p. 7 n.2.

# III. Sufficiency of the Evidence

## A. Child Molesting

[20] Knecht complains, "[t]here was insufficient evidence to revoke Mr. Knecht's probation when he was acquitted of the underlying crime of Child Molest and the State presented no new evidence at the probation revocation hearing." Appellant's Br. p. 14.

[21] We review insufficiency of evidence claims in a probation proceeding as we do any other sufficiency of the evidence question. *Smith v. State* 727 N.E.2d 763, 765 (Ind. Ct. App. 2000). We will not reweigh evidence or judge credibility of witnesses. *Id.* We look only at the evidence favorable to the State and all reasonable inferences therefrom. *Marsh v. State,* 818 N.E.2d 143, 148 (Ind. Ct. App. 2004).

[22] In *Thornton v. State*, this court rejected an argument nearly identical to the argument Knecht advances here. 792 N.E.2d 94 (Ind. Ct. App. 2001). In that case the State charged Bruce Thornton with one count of resisting law enforcement as a Class D felony. After a two-day jury trial, Thornton was found not guilty. Immediately thereafter the trial court held a probation revocation hearing at which neither the State nor the defendant presented additional evidence. Instead the parties relied on the evidence presented at the criminal trial. Based on that evidence the trial court found "it's more likely true

than not true that [Thornton] committed the offense of Resisting Law Enforcement, a Class D felony." 792 N.E.2d 94, 96 (internal quotation omitted). The trial court then revoked Thornton's probation and ordered him to serve the remainder of his suspended sentence on home detention.

[23] Thornton appealed arguing the evidence was not sufficient to support the revocation of his probation. According to Thornton, "his acquittal should prohibit the trial court from revoking his probation for the commission of the crime." *Id.* at 97. We disagreed. In so doing we acknowledged the "widely differing views toward probation revocation proceedings based upon the commission of an offense after the probationer has been acquitted of the offense." *Id.* at 98. Endorsing what we referred to as the "majority position allowing revocation" this Court concluded among other things, "the appropriateness of revocation in each case must be decided on the basis of the evidence presented at the revocation hearing, because in many instances of acquittal the State may not be able to meet its preponderance burden." *Id.* at 98-99 (internal quotation omitted). We reach the same conclusion here. In essence, provided the evidence presented at the revocation hearing supports the finding of a probation violation, a prior acquittal of a criminal offense does not preclude a later finding of a probation violation based on the same offense. *See id.*

Knecht was charged with a probation violation premised in part on the allegation that he committed an act which constituted the crime of child molesting under Indiana Code § 35-42-4-3 (2014). At the time of the allegation the statute provided in relevant part:

> (a) A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct, commits child molesting, a class B felony . . .
>
> (b) A person who, with a child under fourteen (14) years of age performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person commits child molesting, a class C felony.

*Id.*

The evidence presented at the revocation hearing showed that in the Spring of 2013 twenty-one-year old Knecht and then twelve-year-old H.W., who lived in Arizona, began exchanging text messages. H.W. contacted Knecht at the request of her nineteen-year-old cousin who lived in Lebanon Indiana and had established a prior relationship with Knecht that apparently had gone sour. The cousin sought H.W.'s intervention to reestablish the relationship. Discussing their lives and interests, Knecht and H.W. communicated by way of text nearly every day. At some point Knecht and H.W. began having "graphic sex conversations" and "conversations over the phone via text as to what [they] would like to do with each other if [they] were ever to meet." Tr. Vol. 4,

Defendant's Ex. A, p. 57. The parties also exchanged numerous nude photographs of each other.

[26] H.W.'s grandfather, who also lived in Arizona, is a truck driver and on occasion H.W. accompanied him on road trips. In December 2013, he traveled to Indiana and H.W. came along to visit her Lebanon cousin. H.W. texted Knecht to let him know she would be coming to Lebanon and they talked about "meeting up." Tr. Vol. 4, State's Exhibit. 27, p 16. Before arriving, H.W. told Knecht she was 13 years old. H.W. got to Indiana on December 6, and the following day she met with Knecht at a McDonald's parking lot. Knecht arrived in his car - a Mitsubishi Eclipse convertible. H.W. entered, and Knecht drove to a storage unit to retrieve an item that he put in the trunk of the car. They left the area and then drove around for "about an hour." *Id*. at 22. They talked, and "kissed" "mouth to mouth." *Id*. Ultimately Knecht dropped H.W. off at a location near her cousin's home at a trailer park. This turned out to be the first of three meetings between Knecht and H.W.

[27] Later that same day Knecht again picked up H.W., near her cousin's home, and they drove "out to the country" "kind of a country road . . . ." *Id*. at 24. H.W. recounted that the two talked a little and then began "making out" in "the backseats of the car." *Id*. at 25. By that she meant "kissing." *Id*. According to H.W. when she got into the backseat "[Knecht] took off his jacket and we started to make out some more and then I took off my shirt and pants." *Id*. at

26. After H.W. removed her shirt and pants Knecht then "st[uck] his hands down her pants . . . and began rubbing [her vaginal area]." *Id.* Thereafter Knecht drove H.W. back to the area of her cousin's house where she exited the car. Before doing so, the parties discussed meeting again later that night. The plan was for H.W. to "sneak out and go see [Knecht] again." *Id.* at 30. According to H.W. Knecht told her that "his parents have a camper in the garage and that we can go there." *Id.*

H.W. did sneak out "sometime early in the morning." *Id.* And Knecht picked her up "somewhere in the trailer park," *id.* at 31, and drove to the home of Knecht's parents. They exited the car and went into the garage where there was a camper inside. The couple went into the bedroom of the camper where, according to H.W., "[Knecht] takes off my shirt and pants and underwear." *Id.* at 35. And "puts his mouth, um, on the lips of my vagina," *id.* at 36, "then after that he asks if I could do the same to him. So he goes over, rolls over and he takes off his pants and I [performed oral sex]" meaning "his penis in my mouth." *Id.* After that H.W. "climbed on top of [Knecht] and, um, we had sex" meaning "his penis [went] into [my] vagina." *Id.* at 37. Thereafter Knecht and H.W. left the house and camper and went back into town. Ultimately Knecht drove H.W. back to her cousin's home.

[29] During the encounter in the camper, Knecht "used a condom" *id.*, which he "put . . . in the trash . . . in the garage." *Id* at 74. At the revocation hearing Ashley McClure - a Case Manager with the Boone County Probation Department - testified that on the last day of Knecht's criminal trial she was present at the probation department and encountered Knecht. Portions of her testimony follow:

> Q. Did you hear Mr. Knecht make any statements regarding the outcome of his jury trial?
>
> A. I did.
>
> Q. What did you hear him say?
>
> A. He said that he had been found not guilty, um, due to the evidence and then he made reference to them not looking into the trash can.

Tr. Vol. 3, pp. 97-98.

[30] The record reflects that H.W.'s testimony and Knecht's testimony were basically consistent with one another. As the trial court noted, "[t]he major area of material inconsistency concerns what actually happened on the three occasions that H.W. and Defendant were together." Appellant's App. Vol 2, p 41 fn. 4. Rejecting Knecht's denial of engaging in sexual activity with H.W. the trial court credited H.W.'s version of events. And the trial court acted well within its discretion in doing so. In the face of conflicting evidence, the trial court sits "in the best position to weigh any conflicting evidence and assess the credibility of the witnesses." *Hensler v. Brooks*, 684 N.E.2d 1180, 1184 (Ind. Ct.

App. 1997). Further, a revocation proceeding is civil in nature and the State need only prove its allegations by a preponderance of the evidence. Ind. Code § 35-38-2-3.

[31] Here, in evaluating the evidence and crediting H.W.'s testimony over that of Knecht the trial court found "[i]t is more likely than not that Defendant committed child molesting when he kissed [H.W.] on the mouth in his first meeting, made out with her and rubbed her vagina in the second meeting and had oral sex and sexual intercourse with her in the third meeting." Appellant's App. Vol 2, p. 44. The trial court concluded "[t]he State has carried the burden of proof and shown that Defendant violated probation by committing an act that would be child molesting." *Id*. The record amply supports the trial court's conclusion that the State carried its burden of proof by a preponderance of the evidence. We discern no error on this issue.

### B. Contributing to the Delinquency of a Minor

[32] The State alleged Knecht also violated probation by committing an act that constituted the crime of contributing to the delinquency of a minor. The statute provides in relevant part: "A person at least eighteen (18) years of age who knowingly or intentionally encourages, aids, induces, or causes a person less than eighteen (18) years of age to commit an act of delinquency (as defined by IC 31-37-1 or IC 31-37-2) commits contributing to delinquency, a Class A misdemeanor." Ind. Code § 35-46-1-8 (2014). An act of delinquency includes a

curfew violation. And Indiana Code § 31-37-3-3 (2004) provides "it is a curfew violation for a child less than fifteen (15) years of age to be in a public place after 11 p.m. and before 5 a.m. on any day."

[33] In challenging the sufficiency of the evidence Knecht does not contest that H.W., whom he knew to be under age 15, was in a public place during the prohibited time. Instead Knecht argues that he did not "entice" H.W. to leave her home. Appellant's Br. p. 17. According to Knecht, "she left her trailer on her own accord and Mr. Knecht picked her up at the rec center." *Id*. Knecht insists "[t]his is insufficient to support a finding that Mr. Knecht committed the act which constituted the crime of Contributing to the Delinquency of a Minor." *Id.* at 17-18.

[34] We first observe that one violation of a condition of probation is enough to support a probation revocation. *Pierce v. State,* 44 N.E.3d 752, 755 (Ind. Ct. App. 2015). We have already determined that the record supports the trial court's conclusion that the State carried its burden of demonstrating Knecht violated probation by committing an act that would constitute the crime of child molesting. Thus, even if the evidence were not sufficient to support the contributing charge, the evidence nonetheless would support revocation of Knecht's probation based on the child molest charge. In any event we examine Knecht's claim.

[35] By arguing that he did not "entice" H.W. to leave her home, Knecht essentially contends that he did not - in the language of the statute - either "encourage" "aid" or "induce" H.W. to violate curfew. According to Knecht, "To be found guilty of Contributing to the Delinquency of a Minor, the State is required to prove more than just a mere presence." Appellant's Br. p. 17 (citing *Gray v. State*, 249 Ind. 523, 233 N.E.2d 468 (Ind. 1968)).

[36] The statute does not define either "encourage," "aid," or "induce." Undefined words in a statute are given their plain, ordinary and usual meaning. *See* Ind. Code § 1-1-4-1(1) (1991). In determining the plain and ordinary meaning of a statutory term, we sometimes consult English language dictionaries. *State v. Hancock*, 65 N.E.3d 585, 587 (Ind. 2016). And we do so here. However, it is unnecessary to parse the definition of each undefined statutory term. Instead, because each term is listed as an alternative means of committing an act of delinquency, for our purposes one statutory term will suffice. Specifically, "aid" is defined as "to provide support or relief to; help . . . to promote the progress or accomplishment of; facilitate." The Random House Dictionary of the English Language, Unabridged Edition, p. 30 (1966). In this case Knecht concedes that he picked up H.W. in his car in the early morning hours of December 7, 2013. Far from simple "mere presence" as Knecht contends, he at the very least "help[ed]" and "facilitate[ed]" H.W.'s conduct in violating curfew. Knecht's argument to the contrary is merely an invitation for this court

to reweigh the evidence, which we decline. The evidence was sufficient to support the trial court's conclusion that "[t]he State has carried the burden of proof and shown that defendant violated probation by committing an act that would be contributing to the delinquency of a minor." Appellant's App. p. 44.

## IV. *Sentencing*

[37] Knecht last contends the trial court abused its discretion in ordering him to serve his entire suspended sentence on community corrections, namely: Boone County Community Corrections home detention. Citing his employment, payment of child support, and active involvement in his daughter's life, Knecht argues the trial court should have "allowe[d] [him] the opportunity to continue on probation. . . . " Tr. Vol. 2, p. 173.

[38] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). The conditions for probation and whether to revoke probation when those conditions are violated are left to the discretion of the trial court. *Id.* If the trial court determines a probationer has violated a term of probation, then the court may impose one or more of the following sanctions:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>
> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

> (3) Order execution of all or part of the sentence that was
> suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(h) (2015). Here, minus credit for time served in pretrial detention, the trial court ordered execution of all of Knecht's suspended sentence under subsection (h)(3).

[39] We review a court's sentencing decisions for probation violations for an abuse of discretion. *Alford v. State*, 965 N.E.2d 133, 135 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[40] Knecht does not advance a cogent argument explaining why he believes the trial court abused its discretion in ordering Knecht to serve the remainder of his six-year term in community corrections rather than extending his probation. Knecht's transgression was not a violation of a technical provision of his probationary term. For example, the State did not allege that Knecht failed to pay a probation user's fee, or failed to keep an appointment with a probation officer. Rather, Knecht violated probation by committing acts that would constitute the crimes of child molesting as either class B or class C felonies. And the offenses were committed within months of Knecht being placed on probation after pleading guilty to other non-related felony and misdemeanor offenses.

There is simply nothing about the trial court's order that is "against the logic and effect of the facts and circumstances" before the court. *See, e.g., Morgan v. State*, 691 N.E.2d 466, 469 (Ind. Ct. App. 1998) (probationer ordered to serve his original six-year sentence upon a finding of sufficient evidence to support revocation of probation where testimony of probationer's girlfriend at revocation hearing revealed that as couple was driving with their son, probationer hit her at least ten times). In sum, the trial court did not abuse its discretion in sentencing Knecht to serve the balance of his term in Community Corrections.

# Conclusion

We affirm the judgment of the trial court.

Affirmed.

Bradford, J., and Pyle, J., concur.